STATE of Minnesota, by David BEAULIEU, Commissioner, Department of Human Rights, petitioner, Appellant,

v.

INDEPENDENT SCHOOL DISTRICT NO. 624, and White Bear Lake Teachers' Association (MEA), intervenor, Respondents.

No. C1–93–1190.

Supreme Court of Minnesota.

June 16, 1995.

Hubert H. Humphrey, III, Atty. Gen., Erica Jacobson, Asst. Atty. Gen., St. Paul, for appellant.

**394**

Joseph E. Flynn, Knutson, Flynn, Hetland, Deans & Olsen, St. Paul, for I.S.D. #624.

Rebecca H. Hamblin, Harley M. Ogata, MN Educ. Ass'n., St. Paul, for White Bear Lake Teachers' Ass'n.

## OPINION

GARDEBRING, Justice.

This case involves the interpretation of the age discrimination provisions of the Minnesota Human Rights Act (MHRA) and the extent to which those provisions are modified by certain statutory exceptions. The Administrative Law Judge (ALJ) concluded that the contract between respondent Independent School District # 624 (ISD) and the White Bear Lake Principals' Association violated the MHRA because it unlawfully discriminated against employees based on age. The court of appeals reversed the ALJ, holding that the contested provisions of respondent's employment contract were within a statutory exemption to the MHRA, and therefore the discrimination was not unlawful. We affirm, finding sufficient statutory authority to exempt this early retirement program from the age discrimination provisions of the MHRA.

The material facts are undisputed. Colleen Leemon was employed in various positions by ISD from 1976 until 1987. The contract between ISD and the White Bear Lake Principals' Association, which governed her employment, provided in part:

### EARLY RETIREMENT

*Section 1.* Administrators who have completed at least ten (10) years of continuous service with the School District and who are at least forty-five (45) years of age shall be eligible for severance pay, pursuant to the provisions of this Article, upon submission of a written resignation accepted by the School Board by April 1st.

\* \* \* \* \* \*

*Section 3.* Administrators, upon early retirement, shall receive as severance pay an amount representing present contract salary. \* \* \*

*Section 4.* An administrator who retires after June 30, 1985 shall be eligible for severance pay as defined and limited in Sections 3 and 4 according to the following schedule relating to the employee's age at the end of the school year in which early retirement occurs:

| | | |
|---|---|---|
| Age 45 to 60 | | 100% |
| | 61 | 75% |
| | 62 | 50% |
| 63 to 70 | | 0% |

\* \* \* \* \* \*

*Section 8.* An administrator who retires early pursuant to this Article shall be eligible to continue participation in the District group medical-hospitalization, dental and group life insurance plans or individual plans selected by the retiring administrator and shall receive the same School District contributions as provided for other administrators. The amount of life insurance shall be $150,000. The administrator's right to participation and contribution in such group insurance will be for a period of ten (10) years or age 70, whichever comes first. The benefits contained in this Section may be fully or partially delayed from the date of retirement to age 60 at the discretion of the administrator.

*Subd. 1.* The administrator, upon the completion of the ten (10) year time limit or prior to age 71, may elect to enroll in all or part of the insurance programs at the administrator's expense, contingent upon insurance company approval.

In essence, the contract provides an early retirement option for administrators who have worked for ISD for at least 10 years and are 45 years of age. The program authorizes severance pay on a scale based on years of service and continued ISD contributions toward group insurance premiums. Leemon met the service requirements of the program, but was not eligible due to her age.

In 1987, at the age of 36, Leemon voluntarily terminated her employment. She subsequently attempted to collect severance pay and insurance premium reimbursement under the terms of the "Early Retirement" provisions of her employment contract. ISD

denied her request. In June of 1987, after ISD had denied her request, Leemon filed a charge of discrimination against ISD with the Minnesota Department of Human Rights (Department), alleging that ISD had discriminated against her on the basis of age. The Department found probable cause that ISD had engaged in age discrimination. As a result, the Department filed a claim on behalf of Leemon against ISD alleging that certain provisions of the contract discriminated against Leemon, based solely on age, in violation of § 363.03, subd. 1(2) (1986) of the MHRA. The ALJ granted summary judgment for Leemon, concluding that ISD had unlawfully discriminated against her on the basis of age. In a second order, the ALJ directed ISD to pay Leemon in excess of one hundred thousand dollars for severance pay and insurance premiums.

In a split decision by the court of appeals, 509 N.W.2d 572, the majority reversed the ALJ, holding that ISD's voluntary "early retirement incentive" provisions, which distinguished between former employees based on age, was authorized by Minn.Stat. § 465.72 (1986). As a result, the court concluded that the scheme spelled out by the contract, though discriminatory on the basis of age, was not unlawful.

This appeal requires us to examine the relationship of several sections of Minnesota Statutes. We begin with the Minnesota Human Rights Act, which clearly prohibits age discrimination with respect to employee compensation. The MHRA states:

> [I]t is an unfair employment practice:
>
> * * * * * *
>
> (2) For an employer, because of * * * age,
>
> * * * * * *
>
> (c) to discriminate against a person with respect to hiring, tenure, compensation, terms, upgrading, conditions, facilities or privileges of employment.

Minn.Stat. § 363.03, subd. 1 (1986). However, there are several exceptions to the MHRA's general prohibition to age discrimination in employment.[1] The only relevant exception in the present case states:

> Nothing in this chapter shall be construed to prohibit the establishment of differential privileges, benefits, services or facilities for persons of designated ages if *(a) such differential treatment is provided pursuant to statute * * *.*

Minn.Stat. § 363.02, subd. 6 (1986) (emphasis added). The applicability of this MHRA exception turns on whether a separate statute authorizes differential treatment of employees based on age.

 ISD argues that the age differentiation within the early retirement scheme is permitted under the MHRA exception because it is authorized by Minn.Stat. § 465.72, subd. 1.[2] The relevant portion of Minn.Stat. § 465.72 provides:

> age based early retirement plan at issue in this case. During oral argument before us, ISD conceded that TERIP is not an applicable source of statutory authorization for differential treatment because the collective bargaining agreement does not comply with the requirements under section 125.611. As a result, section 125.611 requires no further analysis. However, the existence of a specifically authorized early retirement program under TERIP lends support to our conclusion that Minn.Stat. § 465.72 authorizes age-based differentiation for severance pay. While the legislature could have repealed Minn.Stat. § 465.72 when it adopted the specific authorization of TERIP, it did not do so. Instead it left the more general grant of authority in place for school districts which did not want to comply with the detailed provisions of TERIP, but wished to authorize severance pay under other circumstances, as in this case.

---

1. We note without further analysis that ISD's attempt to apply MHRA exception section 363.02, subd. 1(5) concerning differential benefits for employees of differing ages is unavailing in the present case because the costs to ISD have not been shown to be "reasonably equivalent" between qualifying and non-qualifying members. The application of Minn.Stat. § 363.02, subd. 1(5) (1986) requires:

 [w]ith respect to age discrimination, a practice by which a labor organization or employer offers or supplies varying insurance benefits or other fringe benefits to members or employees of differing ages, *so long as the cost to the labor organization or employer for the benefits is reasonably equivalent for all members or employees.*

 (Emphasis added).

2. ISD argued in the lower courts that the Teachers Early Retirement Incentive Program (TERIP) authorized by Minn.Stat. § 125.611 (1986), provided sufficient statutory authorization for the

Except as may otherwise be provided in Laws 1959, chapter 690, as amended, any county, city, township, school district or other governmental subdivision *may pay severance pay to its employees and promulgate rules for the payment of severance pay to an employee who leaves employment on or before or subsequent to the normal retirement date.* Severance pay shall also include the payment of accumulated vacation leave, accumulated sick leave or a combination thereof. The severance pay shall be excluded from retirement deductions and .from any calculations in retirement benefits. It shall be paid in a manner mutually agreeable to the employee and employer and, except as provided in subdivision 2, over a period not to exceed five years from retirement or termination of employment. If a retired or terminated employee dies before all or a portion of the severance pay has been disbursed, that balance due shall be paid to a named beneficiary or, lacking same, to the deceased's estate. Except as provided in subdivision 2, in no event shall severance pay provided for an employee leaving employment exceed an amount equivalent to one year of pay.

Minn.Stat. § 465.72, subd. 1 (1986) (emphasis added). ISD argues that the authority to pay severance pay and to promulgate rules for the payment of such pay implicitly includes authority to differentiate between employees on the basis of age. We agree. This section is a broad grant of authority for school districts to manage their resources appropriately and to ease employee transition out of the school district work force. In this simple language the legislature has declared its intent to authorize ISD's early retirement program, the only limitation being that the payment shall not exceed one year of pay.[3]

This conclusion conforms with the basic rules of statutory construction. Minn. Stat. § 645.26, subd. 1 (1994), provides that apparently conflicting laws are to be construed together, if possible, to give effect to both provisions. In this case, by reading Minn.Stat. § 465.72 to allow an orderly early retirement program, we give effect to the legislative policy allowing school districts flexibility in the deployment of staff. Further, this interpretation is also consistent with the broad public policy underlying the MHRA's prohibition on age discrimination, which allows exceptions only when authorized in other legislative enactments. Furthermore, there is a presumption that the legislature does not intend a result that is unreasonable. Minn.Stat. § 645.17(1) (1994). A statutory scheme which does not allow a school district to develop an early retirement program limited to persons of a certain age would, we believe, be unreasonable.[4]

The broad language of the MHRA manifests the legislature's strong concern for protection of Minnesota citizens against age discrimination, a concern shared by this court. However, even within that statute, the legislature has authorized certain exceptions. This case involves one of those statutory exceptions, where a competing social policy relative to incentives for early retirement is reflected in other legislative enactments. Our decision today does not undermine the commitment to prohibit unlawful discrimination based on age, but merely clarifies its outer boundaries, consistent with the legislative intent of the MHRA.

Affirmed.

---

**3.** We note that the authorizing statute at issue here contains no definition of "severance pay," and so its direct application to the insurance premiums covered by the contract may be unclear. However, in 1988 the legislature acted to specifically exclude the continuation of group insurance policy premiums for former employees from the definition of severance pay under Minn. Stat. § 465.72, subd. 1. Minn.Laws 1988, Ch. 605, § 10. Thus, it is reasonable to conclude that prior to that year, the term "severance pay" was broad enough to include the insurance premiums at issue here.

**4.** Because we find sufficient statutory authority for ISD's early retirement plan, we need not reach the application of the three part analysis for discrimination claims established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), which ISD argues may provide an alternative basis for upholding its actions.