# United States Court of Appeals

**FOR THE EIGHTH CIRCUIT**

_____

No. 04-1505

_____

| | | |
|---|---|---|
| Ace Electrical Contractors, Inc.; National Electrical Contractors Association, Minneapolis Chapter, | * * * | |
| | * | |
| Appellees, | * | Appeal from the United States District Court for the District of Minnesota. |
| | * | |
| v. | * | |
| | * | [PUBLISHED] |
| International Brotherhood of Electrical Workers, Local Union Number 292, A.F.L.-C.I.O., | * * * | |
| | * | |
| Appellant. | * | |

_____

Submitted: November 15, 2004
Filed: July 14, 2005

_____

Before MURPHY, HANSEN, and MELLOY, Circuit Judges.

_____

HANSEN, Circuit Judge.

The question presented is whether Minnesota's public policy against discrimination in employment on the basis of age, Minn. Stat. § 363A.08 Subds. 1, 2 (Supp. 2003), prohibits a negotiated employee age ratio in a collective bargaining agreement that requires 1 out of every 5 electrical workers in a unionized shop to be

50 years of age or over. The district court[1] concluded that the age ratio requirement cannot be enforced because it violates the clearly defined public policy articulated in the Minnesota Human Rights Act ("MHRA"), Minn. Stat. §§ 363A.01-363A.41 (Supp. 2003). We affirm the judgment of the district court.

I.

In September 2002, Ace Electrical Contractors, Inc. ("Ace") terminated two workers as part of a planned reduction-in-force, and both were over the age of 50. The International Brotherhood of Electrical Workers, Local Union Number 292, A.F.L.-C.I.O. ("Local Union"), the local chapter of the labor organization that represents employees in the electrical trade, filed a grievance against Ace, asserting that the terminations violated the age ratio mandated by their collective bargaining agreement ("CBA"). The CBA provides as follows:

> As a means of caring for the older employees and to promote general economic progress, in all shops employing four (4) or more Employees, every fifth (5th) Journeyman Wireman, if available, shall be fifty (50) years of age or older. Referrals and layoffs for reduction-in-force shall conform to this age ratio, in accordance with Section 4.15(b).

(Appellant's App. at 69, CBA Section 5.08.) Section 4.15(b) of the CBA states, "The age ratio clause in the Agreement calls for the employment of an additional Employee or Employees on the basis of age," and requires the business manager to refer the first applicant on the register that satisfies the applicable age requirements. (Id. at 64 (emphasis added).) Ace's termination of two workers over 50 rendered it out of compliance with the CBA's required age ratio.

---

[1]The Honorable Paul A. Magnuson, United States District Judge for the District of Minnesota.

Ace rejected the grievance on the ground that the age ratio requirement violates the MHRA. The MHRA makes it an unfair employment practice for either a labor organization or an employer to discriminate with regard to privileges of employment "because of . . . age." Minn. Stat. § 363A.08 Subds. 1, 2. Further, the MHRA states that the prohibition against unfair employment practices based on age "prohibits using a person's age as a basis for a decision if the person is over the age of majority." Minn. Stat. § 363A.03 Subd. 2.[2] A labor management committee deadlocked over whether the CBA provision violated the MHRA. Subsequently, the National Electrical Contractors Association, Minneapolis Chapter ("Minneapolis NECA") solicited an opinion from the Minnesota Department of Human Rights on the issue. Then-Commissioner Janeen Rosas issued a detailed opinion, stating that the CBA's age ratio violates the MHRA by requiring employment decisions, such as layoff, recall, or replacement, to be based upon age, contrary to the statute.

The parties then submitted the grievance to the Council on Industrial Relations for the Electrical Contracting Industry ("Council") for arbitration, and Ace requested that the age ratio language be removed from the CBA in light of the Commissioner's opinion that it violates the MHRA. In February 2003, the Council concluded, without discussing the MHRA, that Ace had violated the terms of the CBA by not following the age ratio provisions. The Council awarded lost wages and benefits to the two employees.

In April 2003, the parties received another letter from the Department written by a compliance service officer. This letter reaffirmed the Department's position that

_____

[2]Section 363A.03, Subd. 2, states in full: "The prohibition against unfair employment or education practices based on age prohibits using a person's age as a basis for a decision if the person is over the age of majority except for section 363A.13 which shall be deemed to protect any individual over the age of 25 years."

the CBA's age ratio requirement violates the MHRA and offered suggestions for replacing the age ratio language.

Ace and the Minneapolis NECA filed suit in state court to vacate the Council's award enforcing the CBA's age ratio requirement. The Local Union removed the action to federal court pursuant to the Labor Management Relations Act, 29 U.S.C. § 185 (2000). The plaintiffs then moved for summary judgment, including Commissioner Rosas' opinion that the age ratio requirement violates the MHRA as well as a more recent affidavit from the Department's then-Commissioner Velma J. Korbel, again confirming that the Department's consistent position has been and remains that the age ratio provision is inconsistent with the MHRA's prohibition against discrimination on the basis of age. The Local Union responded with a 1976 letter from the United States Department of Labor and a 1980 letter from the Equal Employment Opportunity Commission ("EEOC"), both stating that the CBA's age ratio requirement does not offend the federal Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621-634, which is designed to limit discriminatory practices against older workers. The Local Union argued that the MHRA should be construed consistently with the federal ADEA's prohibition of age discrimination.

The district court granted summary judgment for Ace and the Minneapolis NECA, and vacated the Council's award. The district court concluded that the CBA's age ratio requirement violates the well-defined public policy of the MHRA, which strictly requires that an employer cannot make any employment decision based on an employee's age. Subsequent to the district court's opinion in this case, the Supreme Court of the United States confirmed the EEOC's understanding of "age" for purposes of the federal ADEA. The Court held that the ADEA is intended to protect older persons and does not prohibit granting additional benefits that favor older workers. See Gen. Dynamics Land Sys., Inc. v. Cline, 540 U.S. 581, 600 (2004). The Local Union appeals, arguing that the Supreme Court's interpretation of "age" under the federal ADEA should apply equally in the context of the MHRA.

-4-

## II.

We review de novo a district court's grant of summary judgment, as well as its interpretation of state law and the terms of a contract. Centric Jones Co. v. City of Kearney, 324 F.3d 646, 648-49 (8th Cir. 2003). The district court's decision to vacate an arbitration award is entitled to no special deference on appeal. Homestake Mining Co. v. United Steelworkers, 153 F.3d 678, 680 (8th Cir. 1998). Where the parties have contemplated that an arbitrator will give meaning to the language of the contract and determine the remedies for the violations it finds, "courts have no authority to disagree with [the arbitrator's] honest judgment" and a court may not reject an arbitrator's fact-findings or interpretation of a contract "simply because it disagrees with them." United Paperworkers Int'l v. Misco, Inc., 484 U.S. 29, 38 (1987). On the other hand, we recognize that "[n]otwithstanding our obligation to show great deference to most arbitration awards, we must not enforce illegal contracts." Teamsters Local Union 682 v. KCI Constr. Co., 384 F.3d 532, 537 (8th Cir. 2004) (internal quotations omitted).

The Local Union argues on appeal that we should enforce the Council's award because it draws its essence from the CBA, and substantial deference is therefore owed to the arbitrator's decision. We cannot say that the Council's decision does not draw its essence from the terms of the CBA or that the Council exceeded the scope of its authority. Nevertheless, although we are bound to give deference to the arbitrator when its decision draws its essence from the CBA, an exception arises when the contract "violates some explicit public policy." W.R. Grace & Co. v. Local Union 759, 461 U.S. 757, 766 (1983). The public policy "must be well defined and dominant, and is to be ascertained by reference to the laws and legal precedents, and not from general considerations of supposed public interests." Id. (internal quotation marks omitted); see also MidAmerican Energy Co. v. Int'l Bhd of Elec. Workers Local 499, 345 F.3d 616, 620 (8th Cir. 2003). "As with any contract . . . a court may

not enforce a collective-bargaining agreement that is contrary to public policy." W.R. Grace, 461 U.S. at 766.

The Local Union next argues that the district court relied on a public policy that was not well defined in the law, because the MHRA's use of the word "age" is ambiguous. The Local Union urges that this ambiguity should be construed consistently with the Supreme Court's recent holding in Cline, where the Court interpreted "age" under the ADEA to permit granting more favorable benefits to older workers. 540 U.S. at 600. Ace and the Minneapolis NECA argue, on the other hand, that the MHRA's use of the term "age" is not ambiguous and should not be interpreted in the same manner as it is in the federal ADEA due to textual differences between the statutes.

While no federal ADEA claim is made in this case, we bear in mind that claims brought under the MHRA are generally considered under the same analytical framework as federal ADEA claims. See Chambers v. Metro. Prop. and Cas. Ins. Co., 351 F.3d 848, 855 (8th Cir. 2003). In Cline, the Supreme Court articulated the relevant analytical framework as requiring a consideration of "the text, structure, purpose, and history of the [statute], along with its relationship to other federal statutes." 540 U.S. at 600. Our analysis of the MHRA will therefore proceed within this framework, which, as always in statutory construction, begins with the text of the statute.

The MHRA, like the ADEA, broadly prohibits discrimination in employment decisions on the basis of "age." Compare Minn. Stat. § 363A.08, Subd. 2 (stating it is an unfair employment practice, "because of . . . age" to discriminate with regard to hiring, among other things), with 29 U.S.C. § 623(a) (stating it is unlawful to refuse to hire, among other things, "because of such individual's age"). Absent any particular modifier, "age" can be understood in alternate ways, "either as pointing to any number of years lived, or as common shorthand for the longer span and

-6-

concurrent aches that make youth look good." <u>Cline</u>, 540 U.S. at 596. Thus, standing alone, "age" is somewhat ambiguous. As the Supreme Court noted in <u>Cline</u>, "[w]hich alternative was probably intended is a matter of context." <u>Id.</u>

Our review convinces us that the context set forth in the MHRA differs significantly from that of the ADEA with regard to the term "age" and does not permit an age ratio requirement that favors older workers on the basis of their age. First, the MHRA broadly defines the protected class to encompass any worker over the age of majority, Minn. Stat. § 363A.03, Subd. 2, whereas in the ADEA, "age" is not specifically defined except to restrict the protected class to people age 40 and above, 29 U.S.C § 631(a) (entitled "Age limits"). The Court in <u>Cline</u> cited this limitation of the protected class as support for its conclusion that the ADEA was intended to protect older workers and not prohibit the granting of additional benefits to older workers. 540 U.S. at 591 ("If Congress had been worried about protecting the younger against the older, it would not likely have ignored everyone under 40."). Contrary to the ADEA, Minnesota chose not to ignore everyone under 40.

Second, the MHRA, unlike the ADEA, provides additional clarifying language in its definition of "age" that goes beyond a mere description of the protected class. In the MHRA's definition of "age," it states that the prohibition against unfair employment practices based on age "<u>prohibits using a person's age as a basis for a decision</u> if the person is over the age of majority." Minn. Stat. § 363A.03, Subd. 2 (emphasis added). Like the broadened protected class, this language–prohibiting use of a person's age as a basis for a decision–similarly gives no support to an inference that "age" is used in the sense of "old age," as the Local Union asserts. Rather, the broad language implies that any decision made with reference to a person's age, be it old or young, is impermissible. The CBA's age ratio requirement is in direct conflict with the text of this statute because it expressly calls for the employment of employees "<u>on the basis of age</u>." (Appellant's App. at 64, CBA Section 4.15(b) (emphasis added).) In particular, the age ratio requires the employment or layoff of

employees on the basis of their older age. (See id. at 69, CBA Section 5.08 (setting a ratio for hire or layoff regarding electricians age 50 and above).) In spite of the fact that the ratio is intended to benefit older workers, it nevertheless calls for the use of "a person's age as a basis for a decision," Minn. Stat. § 363A.03, Subd. 2, directly contrary to the language of the MHRA, which prohibits a decision based on age without distinguishing between older or younger workers.[3]

Further textual references also support our conclusion that the prohibition of age discrimination under the MHRA does not permit parties to contract for an age ratio requirement that favors older workers. The MHRA renders it an unlawful employment practice for any labor organization or employer, before a person is employed or admitted as a member, to print or publish any notice or advertisement that discloses a preference or limitation based upon age. Minn. Stat. § 363A.08, Subd. 4(a)(3). If, as the Local Union asserts, the MHRA permits favoring older employees over younger, advertising or printing such a preference could not be considered an unfair practice. Because the statute prohibits both preferences and limitations based upon "age," it does not support an inference that older workers may be given preference in employment decisions.

The Local Union argues that the text of Minn. Stat. § 363A.08, Subd. 7, indicates an intent to benefit older workers, but we fail to see how this subdivision sheds any light on the meaning of "age" under the MHRA. Section 363A.08, Subd. 7, states that age discrimination includes "acts which interfere with an employee's opportunity to acquire pension credits," unless based on just cause unrelated to the employee's status with regard to pension credits. While this language indicates a

_____

[3]Accordingly, we respectfully disagree with the dissent's characterization of our decision today as "holding that Minnesota has an explicit and dominant public policy against protecting older workers." (Infra at 12.) On the contrary, we hold that the statute itself manifests an intent to protect all workers, young and old alike, from any employment decision based on age.

recognition that pension credits may correlate with a person's age to some extent, the statute does not prohibit any underlying correlation between age and pension status. The statute merely prohibits interference with the opportunity to acquire pension benefits without specifying any particular age group. In fact, the MHRA provides a specific exemption from age discrimination for pension and retirement plans that establish differential privileges or benefits for persons of designated ages if the differential treatment is provided by statute or the designated age is over 59 or less than 21 (specially noting that these age limitations cannot be applied to hiring or conditions of employment). Minn. Stat. § 363A.20, Subd. 9. See State by Beaulieu v. Ind. Sch. Dist. No. 624, 533 N.W.2d 393, 394-96 (Minn. 1995) (finding a statutory exemption where a 36-year-old school district employee alleged age discrimination because an early retirement package benefitted only employees age 45 and above–the age differentiation was implicitly authorized by statute so not a violation of the MHRA). In sum, the reference to pension benefits in Section 363A.08, Subd. 7, does not indicate an intent to benefit only older workers, and due to the exceptions built into the MHRA, our interpretation of the MHRA in this case will not undermine the entire public retirement system, as the Local Union suggests.

While statutory exceptions may apply in some contexts, as noted above, absent a specific exception, the MHRA's plain text prevails to treat workers of all ages within the protected class similarly with regard to age. In reaching a contrary result in the federal ADEA context, the Supreme Court reasoned that the structure and legislative history of the ADEA indicated a clear intent to benefit older workers. See Cline, 540 U.S. at 586 (stating "Congress's interpretive clues speak almost unanimously to an understanding of discrimination as directed against workers who are older"). The Court in Cline noted that when the ADEA was enacted, Congress had a well-documented understanding that older workers were often unfairly denied employment opportunities on the basis of unwarranted stereotypes and that, by all reports, the ADEA would be a remedy for unfair preferences based on relative youth. See id. at 590-91. Congress made specific findings and statements of purpose that are

codified in the ADEA, describing a legislative intent to protect "older workers" who find themselves disadvantaged in employment situations because of arbitrary age limits that disregard actual job performance. 29 U.S.C. § 621(a). Congress further stated, "It is therefore the purpose of this chapter to promote the employment of <u>older persons</u> based on their ability rather than age." 29 U.S.C. § 621(b) (emphasis added).

The Local Union would have us infer that the Minnesota legislature had the same intent, though it is nowhere expressed nor can it be implied from any "interpretive clues." The MHRA's prohibition of age discrimination, enacted 10 years after the ADEA, neither expressly adopts the ADEA's statements of purpose nor does it specifically reference "older persons" in its policy statement. The Minnesota legislature enacted a section entitled "Public Policy," which states only that it is the public policy of the state of Minnesota, in relevant part, "to secure for persons in this state, freedom from discrimination in employment because of . . . age." Minn. Stat. § 363A.02 Subd. 1(a)(1). This broad statement of policy, considered with the broad sweep of the prohibited conduct in Minn. Stat. §363A.08, provides no basis on which to infer that the MHRA permits employers to make an employment decision based on age, even when the decision benefits older workers. <u>See</u> <u>Beaulieu</u>, 533 N.W.2d at 396 (although finding a statutory exemption authorized the beneficial treatment of older workers in that case, the court emphasized that in general, "[t]he broad language of the MHRA manifests the legislature's strong concern for protection of Minnesota citizens against age discrimination"). We will not infer limitations on the plain language of the statute absent some indication that the legislature intended such a result. We conclude that the language of the CBA's age ratio provision requires the employer to make an employment decision on the basis of age, which is directly contrary to the plain language of the public policy articulated in the MHRA.

We find further support for this conclusion in the opinions issued by the Department. Commissioner Rosas concluded in December 2002, based on the plain

language of the MHRA, that the CBA's age ratio impermissibly required the employer to make an employment decision on the basis of age and also violated the MHRA's prohibition of printing any notice or advertisement relating to employment that discloses a preference based on age. A Compliance Services Officer reported that the Department held the same position in April 2003, and Commissioner Korbel took the same position in September 2003. As noted by the district court, while the State Commissioners' opinions about state law are not entitled to any controlling weight, because in this case they are thorough, well-reasoned, and consistent, they are entitled to our respect and they have the "power to persuade, if lacking power to control." Skidmore v. Swift & Co., 323 U.S. 134, 140 (1944).

Finally, the national office of the International Brotherhood of Electrical Workers ("IBEW") filed an amicus curiae brief in support of the Local Union, arguing that the federal ADEA preempts the MHRA. The Local Union took up the torch and argued preemption for the first time in its reply brief. The IBEW and the Local Union contend that if the MHRA prohibits the age ratio requirement, then the MHRA stands as an obstacle to the full accomplishment of Congress's purposes because the Supreme Court has concluded that the ADEA permits employers to grant more beneficial treatment to older workers. Accordingly, they argue that the MHRA is preempted. See Hines v. Davidowitz, 312 U.S. 52, 67 (1941) (noting that preemption applies when a state's law "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress").

This argument was not presented to the district court. "[I]t is well established that, unless a manifest injustice would result, a claim not articulated to the district court is subject to forfeit on appeal." Roberts v. Apfel, 222 F.3d 466, 470 (8th Cir. 2000). The Local Union asserts that we may nevertheless reach this argument because it is jurisdictional. We disagree. The preemption argument is not jurisdictional in this case because subject matter jurisdiction here is premised upon the Labor Management Relations Act, regardless of whether or not we conclude as

-11-

a matter of law that the ADEA preempts the MHRA. See Johnson v. Armored Transp. of Cal., Inc., 813 F.2d 1041, 1043-44 (9th Cir. 1987) (holding that preemption questions concerning choice of forum are jurisdictional but preemption questions concerning only choice of law are waived if not timely raised). We decline to address this argument raised for the first time on appeal.

III.

Accordingly, we affirm the judgment of the district court vacating the Council's award.

Murphy, Circuit Judge, dissenting.

Today the court vacates the decision of an experienced labor arbitration council on the basis of its holding that Minnesota has an explicit and dominant public policy against protecting older workers. Our court must defer to an arbitrator's decision when it draws its essence from the collective bargaining agreement and the arbitrator acted within the scope of its authority, see Homestake Mining Co. v. United Steelworkers of Am. Local 7044, 153 F.3d 678, 680 (8th Cir. 1998), and it is not disputed that these prerequisites are satisfied here. The only contested issue is whether the public policy exception to the general rule of deference may be applied. This exception is a very narrow one, see E. Assoc. Coal Corp. v. United Mine Workers of Am., 531 U.S. 57, 63 (2000), and can only be invoked if the arbitrator's decision violated a "well defined," "dominant," and "explicit" public policy. W.R. Grace & Co. v. Local Union 759, 461 U.S. 757, 766 (1983). Since it has not been shown that the arbitration decision in this case violated any well defined public policy, I respectfully dissent.

Our jurisdiction over this case is based on the Labor Management Relations Act of 1947, and the congressional preference for private resolution of collective

bargaining disputes is a cornerstone of that statute. See 29 U.S.C. § 173(d). It is also well established that judicial review of arbitration awards is extremely limited. Lee v. Chica, 983 F.2d 883, 885 (8th Cir. 1993). The deferential standard for reviewing decisions of arbitrators is particularly prized in labor cases because it promotes private settlement of labor disputes. United Paperworkers Int'l Union v. Misco, Inc., 484 U.S. 29, 37 (1987). Collective bargaining agreements typically contain many detailed provisions outlining each party's rights and responsibilities, yet the parties understand that difficult problems of interpretation are bound to arise. When they have exercised their right to select an arbitrator familiar with the industry to resolve such disputes rather than to rely on the public court system, courts are bound to respect their preference under federal labor law as well as arbitration law. See id. at 37-38.

The Minneapolis chapter of the National Electrical Contractors Association, of which Ace is a member, and Local 292 of the International Brotherhood of Electrical Workers have included an age ratio provision in their collective bargaining agreement for more than sixty years. As part of their bargaining they agreed long ago that a limited number of work opportunities should be reserved for qualified older electricians. This provision offsets other parts of the agreement which permit employers to make unhindered employment decisions without giving any reason. For example, employers may turn down any electrician referred by the hiring hall without explanation and choose which employees to lay off without giving reasons. With awareness that such purely discretionary decisions by employers could impact older workers, the parties agreed on the age ratio provision to ensure that older electricians would not be shut out of job opportunities.

These parties have a longstanding agreement to submit any matter in dispute to arbitration for a final binding decision. They have agreed to use the services of the Council on Industrial Relations for the Electrical Contracting Industry, which is composed of members who represent both employers and unions and who are

experienced in the field. The parties have not been indifferent to the requirements of the law against age discrimination. After enactment of the ADEA the Union checked with the agencies charged with its enforcement, initially the United States Department of Labor and then the Equal Employment Opportunity Commission. Both agencies issued opinions upholding the legality of the age ratio provision in this collective bargaining agreement.

The strong preference for private resolution of disputes means that the public policy exception to enforcement of arbitration awards should be strictly and narrowly applied. See E. Assoc. Coal Corp., 531 U.S. at 63. As the Supreme Court explained in W.R. Grace, the public policy exception requires a showing (1) that there is a well defined public policy (2) that the policy is explicit (3) that it is dominant and (4) that it can be ascertained by reference to laws and legal precedents, as opposed to general considerations of supposed interest. 461 U.S. at 766. The policy asserted here to invoke the narrow exception to the rule upholding arbitration awards is not a well defined public policy, for it is not explicit and it cannot be clearly ascertained by reference to the ambiguous statute on which it is based or to controlling legal precedent.

When Minnesota added age discrimination to the MHRA some ten years after the ADEA was enacted, the Minnesota legislature amended its statement of Public Policy in Minnesota Statute § 363A.02, Subdivision 1(a)(1). The declared public policy of the enactment was simply to ensure "freedom from discrimination in employment" because of "age." The legislature did not attempt to define age discrimination or to describe the problem which it sought to remedy. Age discrimination has generally been perceived as a problem for older workers as opposed to the younger, and the legislature made no statement to indicate that its understanding was different. I submit that no explicit Minnesota public policy against protecting older workers can be found in the statute, and it has not received such an interpretation by any state court or attorney general opinion.

At the time the district court ruled in this case, it did not have the benefit of the Supreme Court's decision in General Dynamics Land Systems, Inc. v. Cline, 540 U.S. 581 (2004), which thoroughly discussed the ambiguity of the term "age discrimination."  The Court ruled against the Cline plaintiffs, who were over 40 years of age but who sought relief against older workers, holding that the ADEA "forbids discriminatory preference for the young over the old" but not the reverse.  Id. at 584. The word "age" is ambiguous, said the Court, but in its "commonly understood narrow sense" the word means "relatively old age."  Id. at 592 n.5.  The Court considered the extensive legislative history behind the ADEA and concluded that the major problem it revealed was discrimination against older workers.  Hearings revealed that younger workers were in a stronger position than their older counterparts in the job market, and there was no evidence that younger workers perceived themselves to be discriminated against to the benefit of older workers.  Id. at 589.  After a thorough review of the background that led to the landmark law against age discrimination, the Court concluded that "social history emphatically reveals an understanding of age discrimination as aimed against the old, and the statutory reference to age discrimination in this idiomatic sense is confirmed by legislative history."  Id. at 596.

Minnesota courts look to decisions of the United States Supreme Court to interpret the MHRA.  The Minnesota Supreme Court has stated that it will usually "follow the lead of the United States Supreme Court's interpretations of federal anti-discrimination statutes."  Huisenga v. Opus Corp., 494 N.W.2d 469, 472 (Minn. 1992).  Cases brought under the MHRA are considered under the same analytical framework defined under federal law, as the majority concedes in its citation to Chambers v. Metropolitan Property & Casualty Insurance Co., 351 F.3d 848, 855 (8th Cir. 2003).

State cases have also relied on other federal law to interpret the wording of the MHRA. E.g., Huisenga, 494 N.W.2d at 472-73 (using Title VII case law to interpret the meaning of "bona fide occupational qualification" under the MHRA); Lang v. City of Maplewood, 574 N.W.2d 451, 453-54 (Minn. Ct. App. 1998) (using Americans with Disabilities Act case law to interpret the meaning of "qualified individual with a disability" under the MHRA). Just as the ADEA proscribes discrimination "because of [an] individual's age," 29 U.S.C. § 623(a)(1), the legislature proscribed discrimination in employment "because of . . . age" in the MHRA, Minn. Stat. § 363A.02, Subd. 1(a)(1). The fact that these prohibitions against age discrimination are worded in almost identical terms is other evidence that a Minnesota court would interpret age discrimination in the way the Supreme Court interpreted the ADEA in Cline.

There are undoubted differences between the MHRA and the ADEA. In its "statement of findings and purpose" Congress included mention of the disadvantages faced by older workers and the adverse affects on commerce from age discrimination. 29 U.S.C. § 621. The MHRA has a briefer statement of purpose in Minn. Stat. § 363A.02, Subd. 1(a)(1), but its provisions on age discrimination were placed within an existing statutory framework. The MHRA is a general human rights statute, not one devoted to a single area. Age discrimination is only one of the eleven types of employment discrimination which are covered in Minn. Stat. § 363A.08; others include discrimination on the basis of race, sex, and disability. The MHRA also addresses discrimination in areas other than employment, such as housing, public accommodations, and business opportunity.

In such a general purpose statute, the absence of a statement defining age discrimination in employment should not be read as evidence that the legislature did not have the same understanding of the problem as Congress. There is nothing in the record to show that the Minnesota legislature was not motivated by the same concerns that motivated Congress ten years earlier, and no reason to believe that the same type

of bias against older workers in employment declined during that period. In defining age discrimination in its 2004 decision in <u>Cline</u>, the Supreme Court looked at both the social context at the time the ADEA was enacted and at the "youth culture" that subsequently developed and concluded that "where younger is better, talk about discrimination because of age is naturally understood to refer to discrimination against the older." 540 U.S. at 591.

By including all persons over the age of majority in § 363A.08, the Minnesota legislature chose to broaden the group of people protected from age discrimination, but that does not necessarily mean that it made a policy choice to protect younger workers to the disadvantage of the older. The statute is at the very least ambiguous in respect to the problem it intended to address. Although Congress chose to protect only workers aged 40 and above, hearings held before the statute's passage produced evidence that workers under the age of 40 were also being discriminated against by employers who wanted even younger workers. One example was women flight attendants who were being discharged on reaching the age of 32. <u>Id.</u>

Nothing in the language of the MHRA or related to its passage indicates that Minnesota chose to protect young workers at the expense of more vulnerable older workers. Minn. Stat. § 363A.03 "prohibits using a person's age as a basis for a decision," but the meaning of that section depends on what was intended by "age." As shown by the Supreme Court, the meaning of "age" must be understood by considering how it is commonly understood in respect to discrimination. <u>See</u> <u>id.</u> at 598. In common usage, discrimination on the basis of age means favoring younger individuals over older ones. <u>Id.</u> at 590-91. Ace's interpretation of the age discrimination provisions in the MHRA, which has been adopted by the majority, would appear to create a general cause of action for disgruntled employees. Any employee unhappy about an employment decision could sue under it as long as someone of a different age benefited by the employment action. That was not likely the intent of the drafters.

The district court relied on two administrative interpretations by state commissioners to ascertain the contours of Minnesota public policy on age discrimination, for the MHRA is itself ambiguous. There were at the time no judicial decisions construing it, but we now have Cline for guidance. Neither of the two administrative statements points to any precedent – judicial or administrative – to show that their interpretation had been adopted by others who work with the statute, and they should not be accorded undue weight. See Medica Primary v. Central States Health & Welfare Fund, 505 N.W.2d 589, 593 (Minn. 1993) ("Where . . . the question is one of first impression and the administrative interpretation is not of longstanding, we need not accord that interpretation great weight."). Commissioner Korbel's affidavit does nothing more than echo the letter from Commissioner Rosas which simply quoted language from the MHRA and summarily concluded that the parties' collective bargaining agreement violated § 363A.08 by reserving a small proportion of employment spots for electricians over the age of 50. Without analysis the letter adopted one interpretation of age discrimination, apparently not contemplating any alternatives. The letter was not based on any factual record and did not display the thoroughness of consideration which can make administrative interpretations persuasive. See Skidmore v. Swift & Co., 323 U.S. 134, 140 (1944). For these reasons it does not demonstrate that Minnesota has an explicit, well defined, and dominant public policy against protecting older workers. See W.R. Grace, 461 U.S. at 766.

Although the text of the MHRA permits the interpretation adopted by the district court, it can also be read in the way endorsed by the arbitration council and consistent with Cline. The circumstances here are not like those in Iowa Electric Light & Power Co. v. Local Union 204, 834 F.2d 1424 (8th Cir. 1987), where we applied the public policy exception on the basis of unambiguous nuclear power safety regulations.

The law of Minnesota simply does not provide the clarity necessary to invoke the public policy exception to overcome the strong policies in favor of upholding arbitration awards, particularly when the award is grounded in a collective bargaining agreement. Without a clear statement of a dominant, explicit public policy, we are obligated to defer to the decision of a labor arbitration council to which the parties submitted the dispute and which made a decision drawing its essence from the terms of the collective bargaining agreement without exceeding the scope of its authority.

For these reasons the judgment should be reversed and the matter remanded to the district court with instructions to enforce the arbitration award.

_____