HANSEN, Circuit Judge.
The question presented is whether Minnesota’s public policy against discrimination in employment on the basis of age, Minn.Stat. § 363A.08 Subds. 1, 2 (Supp. 2003), prohibits a negotiated employee age ratio in a collective bargaining agreement that requires 1 out of every 5 electrical *898 workers in a unionized shop to be 50 years of age or over. The district court[1] concluded that the age ratio requirement cannot be enforced because it violates the clearly defined public policy articulated in the Minnesota Human Rights Act (“MHRA”), Minn.Stat. §§'363A.01-363A.41 (Supp.2003). We affirm the judgment of the district court.
I.
In September 2002, Ace Electrical Contractors, Inc. (“Ace”) terminated two workers as part of a planned reduction-in-force, and both were over the age of 50. The International Brotherhood of Electrical Workers, Local Union Number 292, A.F.L.-C.I.O. (“Local Union”), the local chapter of the labor organization that represents employees in the electrical trade, filed a grievance against Ace, asserting that the terminations violated the age ratio mandated by their collective bargaining agreement (“CBA”). The CBA provides as follows:
As a means of caring for the older employees and to promote general economic progress, in all shops employing four (4) or more Employees, every fifth (5th) Journeyman Wireman, if available, shall be fifty (50) years of age or older. Referrals and layoffs for reduction-in-force shall conform to this age ratio, in accordance with Section 4.15(b).
(Appellant’s App. at 69, CBA Section 5.08.) Section 4.15(b) of the CBA states, “The age ratio clause in the Agreement calls for the employment of an additional Employee or Employees on the basis of age,” and requires the business manager to refer the first applicant on the register that satisfies the applicable age requirements. (Id. at 64 (emphasis added).) Ace’s termination of two workers over 50 rendered it out of compliance with the CBA’s required age ratio.
Ace rejected the grievance on the ground that the age ratio requirement violates the MHRA. The MHRA makes it an unfair employment practice for either a labor organization or an employer to discriminate with regard to privileges of employment “because of ... age.” Minn. Stat. § 363A.08 Subds. 1, 2. Further, the MHRA states that the prohibition against unfair employment practices based on age “prohibits using a person’s age as a basis for a decision if the person is over the age of majority.” Minn.Stat. § 363A.03 Subd. 2.[2] A labor management committee deadlocked over whether the CBA provision violated the MHRA. Subsequently, the National Electrical Contractors Association, Minneapolis Chapter (“Minneapolis NECA”) solicited an opinion from the Minnesota Department of Human Rights on the issue. Then-Commissioner Janeen Rosas issued a detailed opinion, stating that the CBA’s age ratio violates the MHRA by requiring employment decisions, such as layoff, recall, or replacement, to be based upon age, contrary to the statute.
The parties then submitted the grievance to the Council on Industrial Relations for the Electrical Contracting Industry (“Council”) for arbitration, and Ace requested that the age ratio language be removed from the CBA in light of the Commissioner’s opinion that it violates the MHRA. In February 2003, the Council concluded, without discussing the MHRA, that Ace had violated the terms of the CBA by not following the age ratio provisions. The Council awarded lost wages and benefits to the two employees.
*899 In April 2003, the parties received another letter from the Department written by a compliance service officer. This letter reaffirmed the Department’s position that the CBA’s age ratio requirement violates the MHRA and offered suggestions for replacing the age ratio language.
Ace and the Minneapolis NECA filed suit in state court to vacate the Council’s award enforcing the CBA’s age ratio requirement. The Local Union removed the action to federal court pursuant to the Labor Management Relations Act, 29 U.S.C. § 185 (2000). The plaintiffs then moved for summary judgment, including Commissioner Rosas’ opinion that the age ratio requirement violates the MHRA as, well as a more recent affidavit from the Department’s then-Commissioner Velma J. Korbel, again confirming that the Department’s consistent position has been and remains that the age ' ratio provision is inconsistent with the MHRA’s prohibition against discrimination on the basis of age. The Local Union responded with a 1976 letter from the United States Department of Labor and a 1980 letter from the Equal Employment Opportunity Commission (“EEOC”), both stating that the CBA’s age ratio requirement does not offend the federal Age Discrimination in Employment Act (“ADEA”), 29 U.S.C. § 621-634, which is designed to limit discriminatory practices against older workers. The Local Union argued that the MHRA should be construed consistently with the federal ADEA’s prohibition of age discrimination.
The district court granted summary judgment for Ace and the Minneapolis NECA, and vacated the Council’s award. The district court concluded that the CBA’s age ratio requirement Violates the well-defined public policy of the MHRA, which strictly requires that an employer cannot make any employment decision based on an employee’s age. Subsequent to the district court’s opinion in this case, the Supreme Court of the United States confirmed the EEOC’s understanding of “age” for purposes of the federal ADEA. The Court held that the ADEA is intended to protect older persons and does not prohibit granting additional benefits that favor older workers. See Gen. Dynamics Land Sys., Inc. v. Cline, 540 U.S. 581, 600, 124 S.Ct. 1236, 157 L.Ed.2d 1094 (2004). The Local Union appeals, arguing that the Supreme Court’s interpretation of “age” under the federal ADEA should apply equally in the context of the MHRA.
II.
We review de novo a district court’s grant of summary judgment, as well as its interpretation of state law and the terms of a contract. Centric Jones Co, v. City of Kearney, 324 F.3d 646, 648-49 (8th Cir.2003). The district court’s decision to vacate an arbitration award is entitled to no special deference on appeal. Homestake Mining Co. v. United Steelworkers, 153 F.3d 678, 680 (8th Cir.1998). Where the parties have contemplated that an arbitrator will give meaning to the language of the contract and determine the remedies for the violations it finds, “courts have no authority to disagree with [the arbitrator’s] honest judgment” and a court may not reject an arbitrator’s fact-findings or interpretation of a contract “simply because it disagrees with them.” United Paperworkers Int’l v. Misco, Inc., 484 U.S. 29, 38, 108 S.Ct. 364, 98 L.Ed.2d 286 (1987). On the other hand, we recognize that “[notwithstanding our obligation to show great deference to most arbitration awards, we must not enforce illegal contracts.” Teamsters Local Union 682 v. KCI Constr. Co., 384 F.3d 532, 537 (8th Cir.2004) (internal quotations omitted).
The Local Union argues on appeal that we should enforce the Council’s award because it draws its essence from the *900 CBA, and substantial deference is therefore owed to the arbitrator’s decision. We cannot say that the Council’s decision does not draw its essence from the terms of the CBA or that the Council exceeded the scope of its authority. Nevertheless, although we are bound to give deference .to the arbitrator when its decision draws its essence from the CBA, an exception arises when the contract “violates some explicit public policy.” W.R. Grace & Co. v. Local Union 759, 461 U.S. 757, 766, 103 S.Ct. 2177, 76 L.Ed.2d 298 (1983). The public policy “must be well defined and dominant, and is to be ascertained by reference to the laws and legal precedents, and not from general considerations of supposed public interests.” Id. (internal quotation marks omitted); see also MidAmerican Energy Co. v. Int’l Bhd. of Elec. Workers Local 199, 345 F.3d 616, 620 (8th Cir.2003). “As with any contract ... a court may not enforce a collective-bargaining agreement that is contrary to public policy.” W.R. Grace, 461 U.S. at 766, 103 S.Ct. 2177.
The Local Union next argues that the district court relied on a public policy that was not well defined in the law, because the MHRA’s use of the word “age” is ambiguous. The Local Union urges that this ambiguity should be construed consistently with the Supreme Court’s recent holding in Cline, where the Court interpreted “age” under the ADEA to permit granting more favorable benefits to older workers. 540 U.S. at 600, 124 S.Ct. 1236. Ace and the Minneapolis NECA argue, on the other hand, that the MHRA’s use of the term “age” is not ambiguous and should not be interpreted in the same manner as it is in the federal ADEA due to textual differences between the statutes.
While no federal ADEA claim is made in this case, we bear in mind that claims brought under the MHRÁ are generally considered under the same analytical framework as federal ADEA claims. See Chambers v. Metro. Prop, and Cas. Ins. Co., 351 F.3d 848, 855 (8th Cir.2003). In Cline, the Supreme Court articulated the relevant analytical framework as requiring a consideration of “the text, structure, purpose, and history of the [statute], along with its relationship to other federal statutes.” 540 U.S. at 600, 124 S.Ct. 1236. Our analysis of the MHRA will therefore proceed within this framework, which, as always in statutory construction, begins with the text of the statute.
The MHRA, like the ADEA, broadly prohibits discrimination in employment decisions on the basis of “age.” Compare Minn.Stat. § 363A.08, Subd. 2 (stating it is an unfair employment practice, “because of ... age” to discriminate with regard to hiring, among other things), with 29 U.S.C. § 623(a) (stating it is' unlawful to refuse to hire, among other things, “because of such individual’s age”). Absent any particular modifier, “age” can be understood in alternate ways, “either as pointing to any number of years lived, or as common shorthand for the longer span and concurrent aches that make youth look good.” Cline, 540 U.S. at 596, 124 S.Ct. 1236. Thus, standing alone, “age” is somewhat ambiguous. As the Supreme Court noted in Cline, “[w]hich alternative was probably intended is a matter of context.” Id.
Our review convinces us that the context set forth in the MHRA differs significantly from that of the ADEA with regard to the term “age” and does not permit an age ratio requirement that favors older workers on the basis of their age. First, the MHRA broadly defines the protected class to encompass any worker over the .age of majority, Minn.Stat. § 363A.03, Subd. 2, whereas in the ADEA, “age” is not specifically defined except to restrict the protected class to people age 40 and above, 29 U.S.C § 631(a) (entitled “Age limits”). The Court in Cline cited *901 this limitation of the protected class as support for its conclusion that the ADEA was intended to protect older workers and not prohibit the granting of additional benefits to older workers. 540 U.S. at 591, 124 S.Ct. 1236 (“If Congress had been worried about protecting the younger against the older, it would not likely have ignored everyone under 40.”). Contrary to the ADEA, Minnesota chose not to ignore everyone under 40.
Second, the MHRA, unlike the ADEA, provides additional clarifying language in its definition of “age” that goes beyond a mere description of the protected class. In the MHRA’s definition of “age,” it states that the prohibition against unfair' employment practices based on age “prohibits using a person’s age as a basis for a decision if the person is over the age of majority.” Minn.Stat. § 363A.03, Subd. 2 (emphasis added). Like the broadened protected class, this language-prohibiting use of a person’s age as a basis for a-decision-similarly gives no support to an inference that “age” is used in the sense of “old age,” as the Local Union asserts. Rather, the broad language implies that any decision made with reference to a person’s age, be it old or young, is impermissible. The CBA’s age ratio require-, ment is in direct conflict with the text of this statute because it expressly calls for the employment of employees “on the basis of age.” (Appellant’s App. at 64, CBA Section 4.15(b) (emphasis added).) In-particular, the age ratio requires the employment or layoff of employees on the basis of their older age. 0See id. at 69, CBA Section 5.08 (setting a ratio for hire or layoff regarding electricians age 50 and above).) In spite of the fact that the ratio is intended to benefit older workers, it nevertheless calls for the use of “a person’s age as a basis for a decision,” Minn.Stat. § 363A.03, Subd. 2, directly contrary to the language of the MHRA; which prohibits a decision based on age' without distinguishing between older or younger workers.[3]
Further textual references also support our conclusion that the prohibition of age discrimination under the MHRA. does not permit parties to contract for an age ratio requirement that favors older workers. The MHRA renders it an unlawful employment practice for any labor organization or employer, before a person is employed or admitted as a member, to print or publish any notice or advertisement that discloses a preference or limitation based upon age. Minn.Stat. § 363A.08; Subd. 4(a)(3). If, as-the Local Union asserts, the MHRA permits favoring older employees over younger, advertising or printing such a preference could not be considered an unfair practice. Because the statute prohibits both preferences and limitations based upon “age,” it does not support an inference that older workers may be given preference in employment decisions.
The Local Union argues that the text of Minn.Stat. § 363A.08, Subd. 7, indicates an intent to benefit older workers, but we fail to see how this subdivision sheds any light on the meaning of “age” under the MHRA. Section 363A.08, Subd. 7, states that age discrimination includes “acts which interfere with an employee’s opportunity to acquire pension credits,” unless based on just cause unrelated to the employee’s status with regard to pension credits. While this language indicates a recognition that pension credits may correlate with a per *902 son’s age to some extent, the statute does not prohibit any underlying correlation between age and pension status. The statute merely prohibits interference with the opportunity to acquire pension benefits without specifying any particular age group. In fact, the MHRA provides a specific exemption from age discrimination for pension and retirement plans that establish differential privileges or benefits for persons of designated ages if the differential treatment is provided by statute or the designated age is over 59 or less than 21 (specially noting that these age limitations cannot be applied to hiring or conditions of employment). Minn.Stat. § 363A.20, Subd. 9. See State by Beaulieu v. Ind. Sch. Dist. No. 624, 533 N.W.2d 393, 394-96 (Minn.1995) (finding a statutory exemption where a 36-year-old school district employee alleged age discrimination because an early retirement package benefitted only employees age 45 and above-the age differentiation was implicitly authorized by statute so not a violation of the MHRA). In sum, the reference to pension benefits in Section 363A.08, Subd. 7, does not indicate an intent to benefit only older workers, and due to the exceptions built into the MHRA, our interpretation of the MHRA in this case will not undermine the entire public retirement system, as the Local Union suggests.
While statutory exceptions may apply in some contexts, as noted above, absent a specific exception, the MHRA’s plain text prevails to treat workers of all ages within the protected class similarly with regard to age. In reaching a contrary result in the federal ADEA context, the Supreme Court reasoned that the structure and legislative history of the ADEA indicated a clear intent to benefit older workers. See Cline, 540 U.S. at 586, 124 S.Ct. 1236 (stating “Congress’s interpretive clues speak almost unanimously to an understanding of discrimination as directed against workers who are older”). The Court in Cline noted that when the ADEA was enacted, Congress had a well-documented understanding that older workers were often unfairly denied employment opportunities on the basis of unwarranted stereotypes and that, by all reports, the ADEA would be a remedy for unfair preferences based on relative youth. See id. at 590-91, 124 S.Ct. 1236. Congress made specific findings and statements of purpose that are codified in the ADEA, describing a legislative intent to protect “older workers” who find themselves disadvantaged in employment situations because of arbitrary age limits that disregard actual job performance. 29 U.S.C. § 621(a). Congress further stated, “It is therefore the purpose of this chapter to promote the employment of older persons based on their ability rather than age.” 29 U.S.C. § 621(b) (emphasis added).
The Local Union would have us infer that the Minnesota legislature had the same intent, though it is nowhere expressed nor can it be implied from any “interpretive clues.” The MHRA’s prohibition of age discrimination, enacted 10 years after the ADEA, neither expressly adopts the ADEA’s statements of purpose nor does it specifically reference “older persons” in its policy statement. The Minnesota legislature enacted a section entitled “Public Policy,” which states only that it is the public policy of the state of Minnesota, in relevant part, “to secure for persons in this state, freedom from discrimination in employment because of ... age.” Minn.Stat. § 363A.02 Subd. 1(a)(1). This broad statement of policy, considered with the broad sweep of the prohibited conduct in Minn.Stat. § 363A.08, provides no basis on which to infer that the MHRA permits employers to make an employment decision based on age, even when the decision benefits older workers. See Beaulieu, 533 N.W.2d at 396 (although finding a *903 statutory exemption authorized the beneficial treatment of older workers in that case, the court emphasized that in general, “[t]he broad language of the MHRA manifests the legislature’s strong concern for protection of Minnesota citizens against age discrimination”). We will not infer limitations on the plain language of the statute absent some indication that the legislature intended such a result. We conclude that the language of the CBA’s age ratio provision requires the employer to make an employment decision on the basis of age, which is directly contrary to the plain language of the public policy articulated in the MHRA.
We find further support for this conclusion in the opinions issued by the Department. Commissioner Rosas concluded in December 2002, based on the plain language of the MHRA, that the CBA’s age ratio impermissibly required the employer to make an employment decision on the basis of age and also violated the MHRA’s prohibition of printing any notice or advertisement relating to employment that discloses a preference based on age. A Compliance Services Officer reported that the Department held the same position in April 2003, and Commissioner Korbel took the same position in September 2003. As noted by the district court, while the State Commissioners’ opinions about state law are not entitled to any controlling weight, because in this case they are thorough, well-reasoned, and consistent, they are entitled to our respect and they have the “power to persuade, if lacking power to control.” Skidmore v. Swift & Co., 323 U.S. 134, 140, 65 S.Ct. 161, 89 L.Ed. 124 (1944).
Finally, the national office of the International Brotherhood of Electrical Workers (“IBEW”) filed an amicus curiae brief in support of the Local Union, arguing that the federal ADEA preempts the MHRA. The Local Union took'up the torch and argued, preemption for the first time in its reply brief. The IBEW and the Local Union contend that if the MHRA prohibits the age ratio requirement, then the MHRA stands as an obstacle to the full accomplishment of Congress’s purposes because the Supreme Court has concluded that the ADEA permits employers to grant more beneficial treatment to older workers. Accordingly, they argue that the MHRA is preempted. See Hines v. Davidowitz, 312 U.S. 52, 67, 61 S.Ct. 399, 85 L.Ed. 581 (1941) (noting that preemption applies when a state’s law “stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress”).
This argument was not presented to the district court. “[I]t is well, established that, unless a manifest injustice would result, a claim not articulated to the district court is subject to forfeit on appeal.” Roberts v. Apfel, 222 F.3d 466, 470 (8th Cir.2000). The Local Union as serts that we may nevertheless reach this argument because it is jurisdictional. We disagree. The preemption argument is not jurisdictional in this case because subject matter jurisdiction here is premised upon the Labor Management Relations Act, regardless of whether or not we conclude as a matter of law that the ADEA preempts the MHRA. See Johnson v. Armored Transp. of Cal., Inc., 813 F.2d 1041, 1043-44 (9th Cir.1987) (holding that pre emption questions concerning choice of forum are jurisdictional but preemption questions concerning only choice of law are waived if not timely raised). We decline to address this argument raised for the first time on appeal.
III.
Accordingly, we affirm the judgment of the district court vacating the Council’s award.

. The Honorable Paul A. Magnuson, United States District Judge for the District of Minnesota.

. Section 363A.03, Subd. 2, states in full: "The prohibition against unfair employment or education practices based on age prohibits using a person's age as a basis for a decision if the person is over the age of majority except for section 363A.13 which shall be deemed to protect any individual over the age of 25 years."

. Accordingly, we respectfully disagree with the dissent’s characterization of our decision today as "holding that Minnesota has an explicit and dominant public policy against protecting older workers.” (Infra at 12.) On the contrary, we hold that the statute itself manifests an intent to protect all workers, young and old alike, from any employment decision based on-age.