COLLOTON, Circuit Judge.
Teamsters Local Unions 727-S and 77-P (“the Unions”) appeal from the district court’s order vacating an arbitrator’s award of severance pay. Because the arbitrator was at least arguably construing or applying the collective bargaining agreement, a federal court must defer to the arbitrator’s interpretation, and we therefore reverse.
I.
In 2009, Rio Tinto PLC agreed to sell to Bemis Company, Inc., three packaging plants operated by Rio Tinto’s subsidiary, Alcan Packaging Company. The sale closed on March 1, 2010. The Unions represent the workers at the plants and were parties to a collective bargaining agreement with Alcan. After the sale was announced, Bemis informed the Unions that it would not adopt the terms of the agreement. Bemis and the Unions entered into negotiations. Bemis eventually hired all of the Alcan workers who applied to work for Bemis, though under less favorable terms of employment than the workers had enjoyed under their agreement with Alcan.
After the sale closed, the Unions filed a grievance against Alcan, claiming that Al-can violated the agreement. As relevant to this appeal, the Unions claimed that eligible workers at the three plants were entitled to severance pay. Alcan denied the grievance, and the agreement required the parties to submit the dispute to an arbitrator.
The relevant portion of the agreement, Appendix D, provides: “If the Company shall close a plant completely and permanently, employees whose employment shall be terminated as a result thereof and [who are eligible] shall be entitled to a Sever- *841 anee.... ” Because the Unions and Bemis successfully completed their negotiations before the sale closed, there was a seamless transition on the day that Bemis took over, and operations at the plants never ceased. Alcan argued to the arbitrator, therefore, that it never closed the plants, so severance pay was not due under Appendix D. The Unions maintained that Al-can completely and permanently closed the plants—as far as the company was concerned—by selling them to Bemis, even though business at the plants continued uninterrupted following the sale.
The arbitrator ruled for the Unions. Alcan then filed this action in the district court, seeking to vacate the arbitrator’s award of severance pay. The district court granted Alcan’s motion, concluding that the arbitrator’s award of severance pay could not be reconciled with the plain meaning of Appendix D. The Unions appeal, and we review the district court’s decision to vacate the arbitrator’s award de novo. Ace Elec. Contractors, Inc. v. Int’l Bhd. of Elec. Workers, Local Union No. 292, 414 F.3d 896, 899 (8th Cir.2005).
II.
Alcan’s action to vacate the arbitrator’s award arises under Section 301 of the Labor Management Relations Act, 29 U.S.C. § 185. Section 301 confers jurisdiction on federal courts over cases involving a breach of a collective bargaining agreement, id., and it authorizes federal courts to fashion the substantive law that governs such labor disputes. Textile Workers Union of Am. v. Lincoln Mills of Ala., 353 U.S. 448, 456-57, 77 S.Ct. 912, 1 L.Ed.2d 972 (1957). Except in limited circumstances, that body of law requires a court to defer to the arbitrator’s interpretation. See United Paperworkers Int’l Union v. Misco, Inc., 484 U.S. 29, 38, 108 S.Ct. 364, 98 L.Ed.2d 286 (1987).
When Alcan and the Unions contracted to resolve their disputes via arbitration, they agreed to be bound by the arbitrator’s interpretation of the agreement. We may not vacate an award merely because our construction of the agreement differs from the arbitrator’s. United Steelworkers of Am. v. Enter. Wheel & Car Corp., 363 U.S. 593, 599, 80 S.Ct. 1358, 4 L.Ed.2d 1424 (1960). If the arbitrator was “even arguably construing or applying the contract and acting within the scope of his authority, that a court is convinced he committed serious error does not suffice to overturn his decision.” Misco, 484 U.S. at 38, 108 S.Ct. 364 (emphasis added). Only when an arbitrator issues an award that does not “draw its essence from the contract,” because it reflects instead the arbitrator’s “own notions of industrial justice,” may a court vacate an arbitrator’s decision. Id.
Alcan suggests that the Federal Arbitration Act, 9 U.S.C. § 10(a)(4), may provide for more vigorous judicial review than does § 301. If the Act applies, then § 10(a)(4) does not prescribe a different standard of review. The Supreme Court’s most recent case applying § 10(a)(4) recited the § 301 standard and cited authorities arising under the latter statute. See Oxford Health Plans LLC v. Sutter, - U.S. -, 133 S.Ct. 2064, 2068, 186 L.Ed.2d 113 (2013) (citing E. Associated Coal Corp. v. United Mine Workers of Am., 531 U.S. 57, 62, 121 S.Ct. 462, 148 L.Ed.2d 354 (2000), Misco, 484 U.S. at 38, 108 S.Ct. 364, and Enter. Wheel & Car Corp., 363 U.S. at 599, 80 S.Ct. 1358). If there were a conflict between the statutes, moreover, we would apply § 301, because it is a specific directive to create the substantive law that governs collective bargaining agreements, and the specific governs over the general. *842 Int’l Bhd. of Elec. Workers, Local Union No. 545 v. Hope Elec. Corp., 380 F.3d 1084, 1097-98 (8th Cir.2004); Smart v. Int’l Bhd. of Elec. Workers, Local 702, 315 F.3d 721, 724 (7th Cir.2002).
So we evaluate the arbitrator’s decision under the deferential standard that long has governed § 301 cases. The arbitrator here began his analysis by quoting Appendix D and focusing on the issues as the parties had framed them. He recognized that Alcan was liable for severance pay only if two conditions were satisfied: Alcan must have closed the plants completely and permanently, and eligible employees must have been terminated as a result of the closures. The main question facing the arbitrator was whether the seamless transition meant that Alcan had not closed the plants.
After consulting the text of Appendix D and arbitral decisions interpreting similar agreements, the arbitrator concluded that Alcan completely and permanently closed the plants by selling them. Then, after analyzing the text and analogous arbitral precedents, the arbitrator concluded that the employees had been terminated as a result of the closures. In sum, the arbitrator’s award has the hallmarks of an honest judgment that drew its essence from the agreement: he analyzed the text of the contract, consulted decisions interpreting similar contracts, and squarely addressed the parties’ arguments.
Alcan contends that the district court properly vacated the award because the arbitrator’s interpretation of the agreement conflicts with the ordinary meaning of the contract. The sale of the plants was not a closure, the company says, because Alcan did nothing to stop work or other operations at the plants, and the facilities continued to operate without interruption on the day of the sale. Without a closure, Alcan reasons, severance pay was not due under Appendix D, so the arbitrator exceeded his authority by effectively amending the agreement and dispensing his own brand of industrial justice.
This challenge to the award is insufficient to justify vacatur. For one thing, it is not so clear that the arbitrator’s decision is contrary to the plain language of the contract. Alcan concedes that because the contract refers to whether “the Company” has closed the plant completely and permanently, the prospect of closure must be viewed from Alcan’s point of view. If another company reopens the plant after Al-can closes it, even if the closure is for only a day or even an hour, then the reopening by another party does not vitiate a complete and permanent closure by Alcan. So the company is reduced to arguing that while a brief pause between Alcan’s closure and Bemis’s reopening would result in a complete and permanent closure by Al-can, there was no closure here because the transition was seamless. The arbitrator thought there was no meaningful distinction between the two scenarios under the contract. In his view, that a purchaser might reopen a plant, or even seamlessly continue operations, does not mean that the seller did not close it.
Even if the arbitrator was incorrect about that point, such a mistake is not sufficient reason to set aside the award. “[T]he parties having authorized the arbitrator to give meaning to the language of the agreement, a court should not reject an award on the ground that the arbitrator misread the contract.” Misco, 484 U.S. at 38, 108 S.Ct. 364. This is not a situation in which the arbitrator ignored the plain language of the contract, such as by applying the wrong agreement, see Coca-Cola Bottling Co. of St. Louis v. Teamsters Local Union No. 688, 959 F.2d 1438, 1440-41 (8th Cir.1992), or by relying heavily on parol evidence of the parties’ bargaining *843 history rather than the unambiguous terms of the agreement itself. See Excel Corp. v. United Food & Commercial Workers Int’l Union, Local 431, 102 F.Bd 1464, 1468 (8th Cir.1996). Nor is this appeal comparable to Inter-City Gas Corp. v. Boise Cascade Corp., 845 F.2d 184 (8th Cir.1988), where there was no indication that the arbitrator arguably construed or applied the contract when he “disregarded” and “ignored” its plain language. Id. at 188, 189; see Kanuth v. Prescott, Ball & Turben, Inc., 949 F.2d 1175, 1181 (D.C.Cir.1991) (eschewing a “broad” reading of Inter-City Gas); Dist. No. 72 & Local Lodge 1127 v. Teter Tool & Die, 630 F.Supp. 732, 736 (N.D.Ind.1986) (cited in Inter-City Gas, 845 F.2d at 187-88) (vacating arbitrator’s award where arbitrator “disregarded” contract language and based decision “solely upon testimony pertaining to the parties’ intent at the time of the contracting,” such that the award drew its essence “not from the agreement, but rather from the negotiations”).
This is a case, rather, in which the arbitrator at least arguably construed the relevant provision of the contract, but the company contends that he misread the agreement and committed serious error in his interpretation. In that situation, the arbitrator’s decision must stand. Misco, 484 U.S. at 38, 108 S.Ct. 364. Erroneous textual analysis, like “improvident, even silly, factfinding,” id. at 39, 108 S.Ct. 364, does not justify disregarding the decision of the arbitrator agreed upon by the parties to resolve their dispute over severance pay. “It is the arbitrator’s construction which was bargained for; and so far as the arbitrator’s decision concerns construction of the contract, the courts have no business overruling him because their interpretation of the contract is different from his.” Enter. Wheel & Car Corp., 363 U.S. at 599, 80 S.Ct. 1358.
Alcan seeks support in Smullin v. Mity Enterprises, Inc., 420 F.3d 836 (8th Cir.2005), which applied the definition of “plant closing” in the Worker Adjustment and Retraining Notification Act (‘WARN Act”), 29 U.S.C. § 2101 et seq. Under the statute, “plant closing” meant “the permanent or temporary shutdown of a single site of employment,” id. § 2101(a)(2), which the regulations defined as “the effective cessation of production or the work performed” by the facility. 20 C.F.R. § 639.3(b). Not surprisingly, this court determined that this definition was “facility-specific, not employer-specific,” and that there was no “plant closing” when the plant in question did not miss even a day of operation. 420 F.3d at 838.
This case, of course, is not governed by the WARN Act, but by a contract under which the triggering event occurs “[i]f the Company shall close a plant completely and permanently.” Even Alcan does not contend that this definition is facility-specific: the Company closes a plant “completely and permanently” even if a different company reopens the facility at a later time—otherwise, how would the parties ever know that a closure was “permanent”? If the arbitrator had decided this dispute based on the definition of “plant closing” in the WARN Act rather than by reference to the contract between the parties, then he truly would have dispensed his own brand of industrial justice.
* * *
For the foregoing reasons, we reverse the judgment of the district court and remand the case with directions to confirm the arbitration award. We deny the request of the Unions for an award of attorneys’ fees. Alcan acted promptly to seek an order vacating the arbitration award, and the company did not act dishonestly or in bad faith.