# United States Court of Appeals

### For the Eighth Circuit

_____

No. 13-1002

_____

Reyco Granning LLC

*Plaintiff - Appellant*

v.

International Brotherhood of Teamsters, Local Union No. 245

*Defendant - Appellee*

_____

Appeal from United States District Court
for the Western District of Missouri - Springfield

_____

Submitted: September 23, 2013
Filed: November 15, 2013
[Published]

_____

Before WOLLMAN, BEAM, and SMITH, Circuit Judges.

_____

BEAM, Circuit Judge.

Reyco Granning LLC ("Reyco") appeals the district court's adverse grant of summary judgment in favor of International Brotherhood of Teamsters, Local Union No. 245 ("Local 245") and the district court's denial of its motion for summary judgment and request to vacate the arbitrator's award. Reyco and Local 245 are parties to a collective bargaining agreement ("CBA"). At issue here is the policy in

Article XII, section 3 of the CBA: "To be eligible for holiday pay, an employee . . . must have worked a minimum of eight (8) hours on the last regularly scheduled workday of the Company prior to the holiday . . . . Exception may be made if an employee is tardy arriving to work less than sixty (60) minutes . . . ." The CBA also provides that grievances may be taken to arbitration. Pursuant to the CBA, the arbitrator "shall have no authority to substitute his discretion for the Company's discretion in cases where the Company is given discretion by any provision of this Agreement, including the form of discipline imposed against an employee."

Local 245 member Tiffini DePalma filed a grievance under the CBA after being denied holiday pay because she arrived forty-five minutes late on December 22, 2011, due to a flat tire on her automobile. Reyco denied DePalma's holiday pay under the exception because, in its view, DePalma's attendance record did not justify granting the exception. The grievance was submitted to arbitration. The arbitrator concluded the word "may" gave Reyco some discretion in granting the exception for tardiness prior to holiday pay, but the arbitrator concluded that, based on the parties' negotiation history, Reyco's discretion was not unlimited because the parties intended for the exception to apply to "vehicle mechanical trouble, oversleeping, or car wrecks." Thus, the arbitrator directed that DePalma be paid holiday pay under the exception. Reyco appealed the arbitrator's decision and both parties motioned for summary judgment. The district court, recognizing its limited review, upheld the arbitrator's decision, granted summary judgment in favor of Local 245 and denied Reyco's motion for summary judgment.

We review both the grant of summary judgment and the court's legal conclusions in its denial of a motion to vacate an arbitration award de novo. Trailmobile Trailer, LLC v. Int'l Union of Elec. Workers, 223 F.3d 744, 746 (8th Cir. 2000). When deciding whether to vacate an arbitral award, we must accord "an extraordinary level of deference" to the underlying award itself. Boise Cascade Corp.

-2-

v. Paper Allied-Indus., Chem. & Energy Workers, 309 F.3d 1075, 1080 (8th Cir. 2002) (quotation omitted). As the district court noted, we are not authorized to consider the merits of the award, even if the parties allege that the award rests on errors of fact or a misinterpretation of the contract; in fact, we must uphold the award even if we are convinced that the arbitrator committed a serious error, so long as the arbitrator is construing or applying the contract and acting within the scope of the arbitrator's authority. Id. If the award "is derived from the agreement, viewed in light of its language, its context, and any other indicia of the parties' intention," it draws its essence from the agreement, and we will not disturb it on appeal. Id. (quotation omitted). However, an arbitrator's discretion is not completely unfettered. Id. An arbitrator's award may be reversed if it "fails to draw its essence from the agreement" or "manifests disregard for the law where the arbitrators clearly identify the applicable, governing law and then proceed to ignore it." Id. (quotation omitted). Further, we will vacate awards "if the arbitrator ignored or disregarded the plain language of an unambiguous contract or nullified a provision of the contract." The Star Tribune Co. v. Minn. Newspaper Guild Typographical Union, 450 F.3d 345, 348 (8th Cir. 2006); see also Boise Cascade Corp., 309 F.3d at 1082 ("[W]e have vacated awards where the arbitrator ignored or went beyond the plain text of the parties' agreement, *and that text was unambiguous*.").

Here, the arbitrator recognized that the "crux of the issue in the case is whether the use of the word may in [Article XII, section 3] is discretionary or mandatory." Then, the arbitrator recognized the "accompanying question," was "whether the negotiating history should be taken into consideration." The arbitrator concluded the word "may" indicated the company held "some discretion" and that the language of the contract did not make granting the exception mandatory. Yet, without making any determination as to the ambiguity of the relevant contract terms, the arbitrator went on to look at the history of the negotiation along with the testimony of the Local 245 and Reyco representatives and determined that the parties intended to allow the exception for "vehicle mechanical trouble, oversleeping, or car wrecks."

We, however, discern no ambiguity in the contract language at issue. The term "may" is unambiguous, providing Reyco with discretion in granting the holiday pay exception in Article XII, section 3 of the CBA. When dealing with an unambiguous term, "where the plain text of the agreement is unmistakably clear, it is presumed to evince the parties' intent, and the arbitrator normally need look no further, but must give effect to the parties' agreement." Boise Cascade Corp., 309 F.3d at 1082. The arbitrator here exceeded his authority by considering Reyco and Local 245 employee testimony regarding the discussions that took place during the CBA negotiations. Under the arbitrator's interpretation of the provision at issue, Reyco has discretion in granting the exception, except for the instances where the employee is late due to "vehicle mechanical trouble, oversleeping, or car wrecks," the examples given during negotiations. In those circumstances, under the arbitrator's decision, Reyco does not have discretion, rewriting the CBA to read "must" instead of "may." The arbitrator here was "not construing an ambiguous contract term, but rather was imposing a new obligation" upon Reyco. Keebler Co. v. Milk Drivers & Dairy Emps. Union, 80 F.3d 284, 288 (8th Cir. 1996). Thus, the arbitrator's interpretation alters the plain language of the contract as written. Inter-City Gas Corp. v. Boise Cascade Corp., 845 F.2d 184, 187 (8th Cir. 1988) (noting "the arbitrator may not disregard or modify unambiguous contract provisions . . . if the arbitrator interprets unambiguous language in any way different from its plain meaning, [the arbitrator] amends or alters the agreement and acts without authority." (second alteration in original and internal quotation omitted)); Mo. River Servs., Inc. v. Omaha Tribe of Neb., 267 F.3d 848, 855 (8th Cir. 2001) (an arbitrator may not disregard or modify an unambiguous contract provision). Moreover, the parties specifically provided, within the CBA, that the arbitrator could not substitute his discretion for Reyco's where the CBA gives Reyco the power to exercise discretion. See Manhattan Coffee Co. v. Int'l Bhd. of Teamsters, 743 F.2d 621, 623 (8th Cir. 1984) ("[The arbitrator] cannot substitute his discretion for that of the parties").

This case differs from our recent <u>Alcan Packaging Co. v. Graphic Communication Conference, International Brotherhood of Teamsters</u> case, where the arbitrator did not ignore the plain language of the contract, but was construing the relevant provision. 729 F.3d 839, 843 (8th Cir. 2013). Rather, this case is similar to those distinguished in <u>Alcan</u> because the arbitrator relied "heavily on parol evidence of the parties' bargaining history rather than the unambiguous terms of the agreement itself." <u>Id.</u> at 842-43 (citing <u>Excel Corp. v. United Food & Commercial Workers Int'l Union</u>, 102 F.3d 1464, 1468 (8th Cir.1996)) and (citing <u>Dist. No. 72 & Local Lodge 1127 v. Teter Tool & Die</u>, 630 F. Supp. 732, 736 (N.D. Ind. 1986), as "vacating arbitrator's award where arbitrator disregarded contract language and based decision solely upon testimony pertaining to the parties intent at the time of the contracting, such that the award drew its essence not from the agreement, but rather from the negotiations" (internal quotations omitted)). The arbitrator here similarly exceeded his authority.

Accordingly, we vacate the district court's order and opinion granting summary judgment in favor of Local 245 and confirming the arbitration award, and direct the court to grant Reyco's motion for summary judgment, vacating the arbitrator's award.

SMITH, Circuit Judge, dissenting.

I respectfully dissent from the majority's vacatur of the district court's order and opinion granting summary judgment in favor of Local 245 and confirming the arbitration award. "Because the arbitrator was at least arguably construing or applying the collective bargaining agreement, a federal court must defer to the arbitrator's interpretation," *Alcan Packaging Co.*, 729 F.3d at 840; therefore, I would affirm the district court's order and opinion confirming the arbitration award.

"Section 301 [of the Labor Management Relations Act, 29 U.S.C. § 185,] confers jurisdiction on federal courts over cases involving a breach of a collective

bargaining agreement, *id.*, and it authorizes federal courts to fashion the substantive law that governs such labor disputes." *Id.* at 841 (citing *Textile Workers Union of Am. v. Lincoln Mills of Ala.*, 353 U.S. 448, 456–57 (1957)). Courts must "defer to the arbitrator's interpretation," "[e]xcept in limited circumstances." *Id.* (citing *United Paperworkers Int'l Union v. Misco, Inc.*, 484 U.S. 29, 38 (1987)).[1] As the majority acknowledges, when reviewing an arbitral award, "we must accord 'an extraordinary level of deference' to the underlying award itself." *Boise Cascade Corp.*, 309 F.3d at 1080 (quoting *Keebler Co. v. Milk Drivers & Dairy Emps. Union, Local No. 471*, 80 F.3d 284, 287 (8th Cir. 1996)). "While this standard may seem harsh to parties who lose in arbitration, this standard is justified because it is exactly what the parties mutually agreed upon by electing arbitration over judicial resolution of their conflicts." *Electrolux Home Prods. v. United Auto. & Agr. Workers of Am.*, 416 F.3d 848, 853 (8th Cir. 2005) (citing *Enter. Wheel & Car Corp.*, 363 U.S. at 599 ("It is the arbitrator's construction which was bargained for.")).

Although "an arbitrator's decision is not totally free from judicial review" and an arbitral award may be vacated "where it fails to draw its essence from the agreement," we have explained that the "arbitrator's award draws its essence from the

---

[1] "As long as the arbitrator's award 'draws its essence from the collective bargaining agreement,' and is not merely 'his own brand of industrial justice,' the award is legitimate." *Misco*, 484 U.S. at 36 (quoting *United Steelworkers of Am. v. Enter. Wheel & Car Corp.*, 363 U.S. 593, 597 (1960)). "Indeed, we must confirm the award *even if we are convinced that the arbitrator committed serious error*, so long as the arbitrator is even arguably construing or applying the contract and acting within the scope of his authority." *Boise Cascade Corp.*, 309 F.3d at 1080 (emphasis added) (quotation and citations omitted). "We refuse to enforce arbitration awards *only* where the awards do not draw their essence from the parties' underlying agreements, and 'in determining whether an arbitrator has exceeded his authority, the agreement must be broadly construed with all doubts resolved in favor of the arbitrator's award.'" *Int'l Bhd. of Elec. Workers, Local Union No. 545 v. Hope Elec. Corp.*, 380 F.3d 1084, 1100 (8th Cir. 2004) (emphasis added) (quoting *Walsh v. Union Pac. R.R. Co.*, 803 F.2d 412, 414 (8th Cir. 1986)).

parties' agreement as long as it is derived from the agreement, viewed in light of its language, its context, and any other indicia of the parties' intention." *Boise Cascade Corp.*, 309 F.3d at 1080 (quotations, alteration, and citations omitted). Our disagreement with the arbitrator's interpretation of the agreement is not a ground for vacatur of the award "unless that interpretation so directly contradicts the plain meaning of the parties' agreement that it effectively rewrites it." *Id*. at 1081 (citations omitted). "In limited circumstances, even unambiguous language may be trumped by other evidence of the parties' intent if it is abundantly clear that the language does not reflect their intent." *Id*. at 1082 n.6 (citing *Loveless v. E. Air Lines, Inc.*, 681 F.2d 1272, 1279–80 (11th Cir. 1982)).

But "where the plain language of the parties' agreement is silent *or ambiguous* with respect to a disputed issue, an arbitrator is obliged to consider other relevant sources of the parties' intent." *Id*. at 1082 (emphasis added) (citation omitted). As a result, "federal courts routinely confirm arbitral awards where the arbitrator has looked to outside sources for guidance in giving meaning to ambiguous language." *Id*. at 1083 (citing *Fairview Southdale Hosp. v. Minn. Nurses Ass'n*, 943 F.2d 809, 812 (8th Cir. 1991) (per curiam)). In reviewing outside sources, the arbitrator must restrict himself to those outside sources "within the parties' contemplation at the time they drafted their agreement." *Id*. at 1083–84 (citations omitted).

In this case, Article XII, section 3 of the CBA states: "To be eligible for holiday pay, an employee . . . must have worked a minimum of eight (8) hours on the last regularly scheduled workday of the Company prior to the holiday . . . . Exception *may* be made if an employee is tardy arriving to work less than sixty (60) minutes . . . ." (Emphasis added.) The majority faults the arbitrator for not "making any determination as to the ambiguity of the relevant contract terms" before "look[ing] at the history of the negotiation along with the testimony of the Local 245 and Reyco representatives and determin[ing] that the parties intended to allow the

exception for 'vehicle mechanical trouble, oversleeping, or car wrecks.'" *See* Majority Opinion, *supra*.

To be sure, the arbitrator's ambiguity finding was not expressly stated but it was nonetheless sufficiently present to aid in our review. Before the arbitrator, the parties disputed the meaning of the word "may." Local 245 argued "that the collective bargaining agreement['s] state[ment] that the Company may grant an exception and pay holiday pay if an employee is less than 60 minutes late means that it is *mandatory* that the Company pay the holiday pay." (Emphasis added.) Reyco argued that "the word may [i]s *discretionary* and therefore, [it] is not required to grant an exception." (Emphasis added.)

The parties' disagreement over the meaning of "may" does not automatically render the term ambiguous. *See, e.g.*, *City of Jefferson City, Mo. v. Cingular Wireless, LLC*, 531 F.3d 595, 611 (8th Cir. 2008) ("The fact that Alltel can present an argument that the ordinance is susceptible to more than one interpretation does not mean that the ordinance is ambiguous."). But the arbitrator could deem the term "may" ambiguous if the term is "reasonably susceptible to more than one interpretation so that reasonable persons may honestly disagree over the terms' meaning." *Union Elec. Co. v. Consolidation Coal Co.*, 188 F.3d 998, 1002 (8th Cir. 1999) (citations omitted). Here, the arbitrator must have concluded that the word "may" was ambiguous, as he identified "[t]he crux of the issue in this case [as] whether the *use of the word may* in the contract pertaining to the granting of an exception to the rule of working 8 hours on the schedule days prior to and succeeding the holiday *is discretionary or mandatory*." (Emphases added.) In answering this question, the arbitrator stated:

> It is the view of the Arbitrator that the word may indicates that the Company has some discretion in the granting of an exception for tardiness on the days before and after the holiday in reaching a decision

-8-

on the denial of holiday pay. Nothing in the new language of the contract makes granting an exception mandatory in the event that an employee is tardy less than 60 minutes on the days before and after the holiday.

On this record, I conclude that the arbitrator could discern an ambiguity in the contract language at issue. In my opinion, "it is not so clear that the arbitrator's decision is contrary to the plain language of the contract." *Alcan Packaging Co.*, 729 F.3d at 842. The majority concludes that "[t]he term 'may' is unambiguous." *See* Majority Opinion, *supra*. "Certainly, as a general rule of statutory construction, 'may' is permissive, whereas 'shall' is mandatory." *LeMay v. U.S. Postal Serv.*, 450 F.3d 797, 799 (8th Cir. 1999) (citations omitted). However, "this general rule does not close the inquiry" in the present case. *Id*.; *cf. John T. v. Marion Indep. Sch. Dist.*, 173 F.3d 684 (8th Cir. 1999) (explaining that although Iowa courts "generally underst[a]nd" "may" to mean "permissive" or "discretionary action," applying such definition to the statute at issue "would eviscerate the section's overarching mandate"). Thus, "while 'may' suggests discretion, it does not necessarily suggest unlimited discretion. In that respect the word 'may' is ambiguous." *Zadvydas v. Davis*, 533 U.S. 678, 697 (2001). This is exactly what the arbitrator in the present case determined when he stated "that the word may indicates that the Company has *some discretion* in the granting of an exception for tardiness on the days before and after the holiday in reaching a decision on the denial of holiday pay." (Emphasis added.)

Because the arbitrator could have concluded that "may" is an ambiguous term, he was thus justified in "look[ing] to outside sources for guidance in giving meaning to ambiguous language." *Boise Cascade Corp.*, 309 F.3d at 1083 (citations omitted). Here, the arbitrator noted that an "accompanying question [was] whether the negotiating history should be taken into consideration in the instant case of the firm's denial of holiday pay to Tiffani DePalma." The arbitrator then concluded that "the history of negotiations must be taken into consideration" and that testimony from

both parties "indicated that exceptions would be granted for vehicle mechanical trouble, oversleeping, or car wrecks. In view of this, certain limits to Company discretion were expressed in the negotiations."

In summary,

> [t]his is not a situation in which the arbitrator ignored the plain language of the contract, such as by applying the wrong agreement, *see Coca–Cola Bottling Co. of St. Louis v. Teamsters Local Union No. 688*, 959 F.2d 1438, 1440–41 (8th Cir. 1992), or by relying heavily on parol evidence of the parties' bargaining history rather than the unambiguous terms of the agreement itself. *See Excel Corp. v. United Food & Commercial Workers Int'l Union, Local 431*, 102 F.3d 1464, 1468 (8th Cir. 1996). Nor is this appeal comparable to *Inter–City Gas Corp. v. Boise Cascade Corp*., 845 F.2d 184 (8th Cir.1988), where there was no indication that the arbitrator arguably construed or applied the contract when he "disregarded" and "ignored" its plain language. *Id*. at 188, 189; *see Kanuth v. Prescott, Ball & Turben, Inc*., 949 F.2d 1175, 1181 (D.C. Cir. 1991) (eschewing a "broad" reading of *Inter–City Gas* ); *Dist. No. 72 & Local Lodge 1127 v. Teter Tool & Die*, 630 F. Supp. 732, 736 (N.D. Ind. 1986) (cited in *Inter–City Gas*, 845 F.2d at 187–88) (vacating arbitrator's award where arbitrator "disregarded" contract language and based decision "solely upon testimony pertaining to the parties' intent at the time of the contracting," such that the award drew its essence "not from the agreement, but rather from the negotiations").

*Alcan Packaging Co.*,729 F.3d at 842–43 (holding that because arbitrator was at least arguably construing or applying the CBA, the federal court had to defer to the arbitrator's interpretation that the former operator of packaging plants "completely and permanently" closed the plants by selling them and that the employees were terminated as a result of the closures, entitling them to severance pay under the CBA's appendix).

Instead, I conclude that "the arbitrator at least arguably construed the relevant provision of the contract." *Id*. at 843. A fair reading of the arbitrator's decision is that he first determined that "may" is an ambiguous term. Although the majority may disagree with the arbitrator's construction of that term, this is not a sufficient basis on which to vacate the arbitral award. "Erroneous textual analysis, like 'improvident, even silly, factfinding,' [*Misco*, 484 U.S.] at 39, 108 S. Ct. 364, does not justify disregarding the decision of the arbitrator agreed upon by the parties to resolve their dispute over [holiday] pay." *Id*. The parties bargained for the arbitrator's construction of the agreement; as a result, "'so far as the arbitrator's decision concerns construction of the contract, the courts have no business overruling him because their interpretation of the contract is different from his.'" *Id*. (quoting *Enter. Wheel & Car Corp.*, 363 U.S. at 599). Only after answering "whether the use of the word may in the contract pertaining to the granting of an exception to the rule of working 8 hours on the scheduled days prior to and succeeding the holiday is discretionary or mandatory" did the arbitrator then review the parties' negotiating history and determine that testimony from both parties "indicated that exceptions would be granted for vehicle mechanical trouble, oversleeping, or car wrecks."

Accordingly, I would affirm the judgment of the district court.

———————————————