# United States Court of Appeals
## For the Eighth Circuit

———————————————————

No. 17-1322

———————————————————

CenterPoint Energy Resources Corp., doing business as CenterPoint Energy
Minnesota Gas,

*Plaintiff - Appellee*,

v.

Gas Workers Union, Local No. 340, affiliated with the United Association of
Journeymen and Apprentices of the Plumbing and Pipefitting Industry of the
United States and Canada, AFL-CIO,

*Defendant - Appellant*.

————————————

Appeal from United States District Court
for the District of Minnesota - Minneapolis

————————————

Submitted: February 14, 2018
Filed: April 10, 2019

————————————

Before SMITH, Chief Judge, MURPHY and COLLOTON, Circuit Judges.[*]

————————————

———————————————————

[*]This opinion is filed by Chief Judge Smith and Judge Colloton under Eighth
Circuit Rule 47E.

COLLOTON, Circuit Judge.

Gas Workers Union, Local No. 340 appeals the district court's order vacating an arbitration award. The award reinstated a union member to his former position without back pay after he was discharged by the company. Because the arbitrator was at least arguably construing the contract between the parties in making the award, the arbitrator's decision should not have been vacated, and we therefore reverse the judgment of the district court.

I.

CenterPoint Energy Resources Corporation offers maintenance and repair services for furnaces, air conditioners, and appliances. Mark Ness was employed by CenterPoint as a service technician. The Union is party to a collective bargaining agreement with CenterPoint, and service technicians like Ness are part of the bargaining unit represented by the Union.

Service technicians are assigned to a geographic service area. They use laptops equipped with a global positioning system (GPS) to receive work orders, to record when they begin and complete a service call, and to input remarks about the work performed. Service technicians are required to keep accurate time records.

In 2015, a supervisor questioned Ness about alleged discrepancies between Ness's time sheet entries and CenterPoint's GPS records about where Ness was located on four separate dates earlier in the year. CenterPoint ultimately terminated Ness in September 2015 for falsifying his time sheets and neglect of duty. The Union, on behalf of Ness, protested his discharge. After CenterPoint denied the Union's grievance, the Union appealed to arbitration in accordance with the collective bargaining agreement.

Article 26 of the collective bargaining agreement, entitled "Discipline and Discharge," provides:

> The Company has the right to employ or promote in accordance with the provisions of this Agreement, to enforce discipline, to discharge employees for cause, including failure to recognize authority . . . . Without excluding other causes for discharge, the following shall constitute absolute causes from which there shall be no appeal to negotiation or arbitration between the Company and the Union (except that the question of whether the employee has been guilty of the facts constituting such absolute causes shall be a negotiable controversy) namely:

> 1. Use of, or being under the influence of, alcohol or non-medical drugs at any time during the work day.
> 2. Dishonesty
> 3. Neglect of Duty
> 4. Abuse of Sick Leave.

In the arbitration proceeding, the Union argued that the issue for the arbitrator to decide was whether Ness was discharged for just cause, and if not, what should be the appropriate remedy. CenterPoint maintained that the first issue for the arbitrator was whether Ness was discharged for cause. CenterPoint framed this issue in two parts: (a) whether Ness's conduct on specific dates in 2015 constituted dishonesty or neglect of duty as defined by the "absolute cause" provision in Article 26, and (b) alternatively, whether Ness's conduct constituted "just cause" as defined by Article 26. As a second issue for the arbitrator, CenterPoint asked what should be the remedy if Ness was not discharged for cause.

The arbitrator reviewed the language of the agreement and concluded that even if the employee committed one of the four offenses listed in the "absolute cause" provision of Article 26, he had authority to determine whether the employee was

appropriately discharged. The arbitrator then found that although Ness acted dishonestly and neglected his duty on some of the days cited by the company, "the discharge penalty imposed on Mr. Ness was arbitrary and discriminatory and must be modified to comport with the seriousness, length and scope of his misconduct." The arbitrator ordered Ness reinstated without back pay.

CenterPoint filed this action in the district court, seeking to vacate the arbitrator's decision to reinstate Ness. The district court concluded that the arbitrator exceeded his authority and vacated the arbitration award. We review the district court's decision *de novo*. *Alcan Packaging Co. v. Graphic Commc'n*, 729 F.3d 839, 841 (8th Cir. 2013).

## II.

Actions to vacate arbitration awards arise under Section 301 of the Labor Management Relations Act, 29 U.S.C. § 185. Courts have a "limited role" in these cases, because interpretation of a collective bargaining agreement is a matter for the arbitrator. *United Paperworkers Int'l Union, v. Misco, Inc.*, 484 U.S. 29, 36 (1987). "It is the arbitrator's construction which was bargained for; and so far as the arbitrator's decision concerns construction of the contract, the courts have no business overruling him because their interpretation of the contract is different from his." *United Steelworkers of Am. v. Enter. Wheel & Car Corp.*, 363 U.S. 593, 599 (1960). "So long as the arbitrator 'is even arguably construing or applying the contract and acting within the scope of his authority,' the arbitral decision must stand." *NFL Players Ass'n v. NFL*, 831 F.3d 985, 993 (8th Cir. 2016) (quoting *Misco*, 484 U.S. at 38). Even a "serious error" by the arbitrator in construing the contract is insufficient reason to set aside the award. *Misco*, 484 U.S. at 38. "Only when an arbitrator issues an award that does not 'draw its essence from the contract,' because it reflects instead the arbitrator's 'own notions of industrial justice,' may a court vacate an arbitrator's decision." *Alcan Packaging Co.*, 729 F.3d at 841 (quoting *Misco*, 484 U.S. at 38).

The arbitrator here began his analysis of the evidence by quoting Article 26, the contractual provision on discipline and discharge. Based on the company's right under the first sentence of Article 26 to discipline or discharge employees "for cause," the arbitrator concluded that Article 26 "includes a just cause standard for discipline and discharge." He then addressed the company's position, based on the "absolute cause" language of the second sentence, that he lacked authority to modify the discipline if he found that Ness was guilty of dishonesty or neglect of duty at any time.

The arbitrator reasoned that "[i]n reviewing the language of Article 26, it is clear that the Parties did not intend that any employee found to have committed one of the four listed offenses could be summarily discharged without regard to the factors arbitrators normally consider in determining whether there was just cause for discharge." He believed that "[t]o interpret Article 26 in any other manner would violate all of the basic notions of fairness and due process firmly established in the history of industrial relations and implicit in Article 26, which also includes a just cause standard for discipline and discharge." The decision concluded that because the parties included a "just cause" standard in Article 26, "it seems unreasonable to think the Union would have agreed to language [that] gives the Company the unfettered right to discharge for any act of neglect of duty, dishonesty, abuse of sick leave, or use of alcohol or non-medical drugs."

The arbitrator expressed concern that "almost every violation of Company policy could also be interpreted to constitute an act of neglect of duty or dishonesty." Given the breadth of these terms defined as "absolute cause," he reasoned that accepting CenterPoint's position would mean that "an employee guilty of almost any violation of Company policy, no matter how insignificant, could be subjected to summary discharge without the right to challenge the appropriateness of the penalty before an arbitrator." The arbitrator cited decisions of two other arbitrators who interpreted "neglect of duty" narrowly on a similar rationale.

The primary dispute between the parties on this appeal concerns whether the arbitrator acted outside the scope of his authority by "disregarding" or "ignoring" the plain language of the contract. To be sure, the parties to a contract may limit the discretion of an arbitrator, *Misco*, 484 U.S. at 41, but one issue in dispute before the arbitrator here was whether and to what extent the parties had agreed to limitations. A party who disagrees with an arbitrator's contractual interpretation can always characterize the decision as "ignoring" language that favors that party's interpretation, but erroneous textual analysis is not a sufficient ground to vacate an award. *Alcan Packaging Co.*, 729 F.3d at 843. If the arbitrator attempts to construe the contract, but makes a serious error, the decision must stand, because the parties bargained for the arbitrator's interpretation. *Misco*, 484 U.S. at 38.

To justify vacating the award, CenterPoint must establish that the arbitrator based his decision on "some body of thought, or feeling, or policy, or law that is outside the contract." *Ethyl Corp. v. United Steelworkers of Am.*, 768 F.2d 180, 185 (7th Cir. 1985). The arbitrator's disregard of the contract must be clear: that an opinion includes an "ambiguity" that "permits the inference that the arbitrator may have exceeded his authority is not a reason for refusing to enforce the award." *Enter. Wheel*, 363 U.S. at 598 (punctuation omitted).

The company seizes on this arbitrator's reference to "basic notions of fairness and due process firmly established in the history of industrial relations" as evidence of extra-contractual motivation. The arbitrator, however, thought those notions were "implicit in Article 26," *i.e.*, part of the contract, and relied on the fact that Article 26 also included a "just cause" standard as support for this view. So it is not clear that the arbitrator acted on his own notions of industrial justice rather than an effort to construe the contract. The arbitrator here also relied heavily on the potential breadth of the terms "neglect of duty" and "dishonesty," and the arbitrator's view that accepting the company's position on "absolute cause" would effectively negate the

just cause standard derived from the first sentence in Article 26. Right or wrong, this is an interpretation of the contract.

CenterPoint maintains that two prior decisions of this court dictate that the arbitrator's award should be vacated. *See St. Louis Theatrical Co. v. St. Louis Theatrical Bhd. Local 6*, 715 F.2d 405 (8th Cir. 1983); *Truck Drivers & Helpers Union Local 784 v. Ulry-Talbert Co.*, 330 F.2d 562 (8th Cir. 1964). Both decisions held that an arbitrator exceeded his authority, but the reasoning in those cases is distinguishable. The court in *St. Louis Theatrical* relied on the fact that the arbitrator's opinion expressly "reflected the arbitrator's efforts to balance the equities of the situation, rather than to interpret and apply the agreement." 715 F.2d at 409. In other words, the arbitrator in that case—unlike the arbitrator here—did not attempt to interpret the contract or arguably apply the contract; he applied his personal view of equity.

In *Ulry-Talbert*, the only issue submitted to the arbitrator was the basis for an employee's discharge. 330 F.3d at 564. But after finding that the employee was guilty of misconduct, the arbitrator went further and concluded that discharge of the employee was an excessive penalty for the misconduct. *Id.* This court held that the arbitrator exceeded his authority, because the unambiguous agreement between the parties forbade the arbitrator to substitute his judgment for that of the company's management on the question of an appropriate penalty. *Id.* at 564-65. In that case, however, there was nothing in the arbitrator's decision to suggest that he construed the contract to permit review of the penalty, *id.* at 563, and nothing in the text of the agreement to suggest an interpretive route to that conclusion. Here, the arbitrator explained at length why he interpreted the contract to allow for review of the

discipline. Even if there was serious error in the analysis, the arbitrator was arguably construing the contract.[1]

CenterPoint last suggests that we affirm on an alternative ground that the arbitrator's award nullifies the "absolute cause" language of the agreement. This contention, however, is simply another complaint that the arbitrator misread the contract. In any event, whether or not the arbitrator's reading of the contract was correct, it did not entirely nullify the absolute cause language. Under the arbitrator's decision, the absolute cause provision establishes conduct for which the company has an absolute right to impose discipline, even though it does not give the company unfettered authority to select discharge as the appropriate penalty.

\*       \*       \*

For the foregoing reasons, we reverse the judgment of the district court and remand with directions to confirm the arbitration award.

_____

---

[1]CenterPoint also relies on *Reyco Granning LLC v. International Brotherhood of Teamsters, Local Union No. 245*, 735 F.3d 1018 (8th Cir. 2013), but that decision was vacated, and the case eventually was resolved without precedential effect by an equally divided en banc court.